## McKeen *versus* The County of Northampton.

*Capital stock in extra-state corporations, taxable for state and county purposes.*

1. The taxing power rests upon the reciprocal duties of protection and support between the state and the citizen, and the exclusive sovereignty and jurisdiction of the state over the persons and property within its territory.
2. Every citizen of the state, and all the property accompanying his person or falling legitimately within the territorial limits, is subject to this power.
3. The interest which a stockholder has in the stock of a corporation is personal, and is controlled by the law of his domicil.
4. Capital stock, owned by a citizen of Pennsylvania, in a manufacturing corporation located in another state, is taxable for state and county purposes.

ERROR to the Common Pleas of *Northampton county*.
This was an amicable action in the Common Pleas, in which

[McKeen *v.* County of Northampton.]

The County of Northampton was plaintiff and James McKeen defendant, in which the following case was stated for the opinion of the court:—

The Warren Foundry and Machine Company is a manufacturing corporation incorporated by the legislature of the state of New Jersey, and has a capital stock of $200,000, divided into shares of $50 each. That the capital stock of the said company is invested in a foundry, machine-shop, and other real estate situate in the county of Warren, and state of New Jersey, and is taxed under the laws of that state.

The defendant is the owner of four hundred and seventy-two shares of the capital stock of said company. He resides in Bushkill ward, in the borough of Easton, and county of Northampton. The assessor of that ward has assessed and returned this stock as liable and subject to taxation for state and county purposes, and the defendant has appealed from this assessment to the county commissioners.

If the court should be of opinion upon these facts that the said stock is liable to taxation for state and county taxes or either, then judgment to be entered for the plaintiff for the amount of the taxes for which said stock is liable according to the assessment with costs. The amount assessed for state taxes is $70.80, and the amount for county taxes $141.60. If the court should be of opinion that the said stock is not liable to taxation by the commissioners of said county for state and county taxes, then judgment to be entered for the defendant with costs. Either party to be entitled to a writ of error.

The court below (MAYNARD, P. J.), on hearing the case, delivered the following opinion:—

"The power of taxation by a sovereign state is ample. In Pennsylvania there is no constitutional restriction. To provide for the wants of the government under our constitution the power of the legislature is arbitrary and unrestricted. They have the same power to tax the property of the citizen twice or thrice that they have to tax it once. Against the taxing power or the statutes providing for the manner in which the taxes should be levied and collected, it is no argument to say that the taxes are onerous, unequal, inequitable, or unjust. And to all such argument when attempted to be used, it is a sufficient answer to say, 'thus saith the law.' The 32d section of the Act of 29th of April 1844, Purd. Dig. 949, specifies in detail the subjects of taxation, whether owner by a natural or artificial person,—and among these subjects of taxation are enumerated 'all shares of stock in any bank, institution, or company, now or hereafter incorporated by or in pursuance of any law of this Commonwealth, or of any other state or government.' Stocks being personal property follow the person of the owner. This phrase-

[McKeen *v.* County of Northampton.]

ology of our statute certainly includes the stock held by Mr. McKeen, who is a citizen of Pennsylvania, in the Warren Foundry and Machine Company, being an incorporated company created by the statutes of the state of New Jersey. Has this clause of the 33d section of the Act of 29th of April 1844 been repealed? The 33d section of the same act provides for the collection of taxes chargeable on stock held by or under institutions incorporated by the laws of Pennsylvania, and its provisions are inapplicable to the case in hand. The 34th section of the same act changes the rate of assessments of property enumerated in the 33d section. The Act of 12th of April 1859 provides for the assessment and collection of taxes on stocks of companies created by the laws of this state, and leaves the question untouched presented in the 'case stated.' The provision in the clause referred to in the 33d section of the Act of 29th April 1844 is unrepealed and remains in force. The 3d section of the Act of 22d April 1846, Purd. Dig. 951, prescribes the duty of assessors as follows:—It shall hereafter be the duty of each assessor within this Commonwealth, at the time of making the assessments in his ward, borough, or township, to require every person, every firm and partnership, and the president, secretary, cashier, or treasurer of every company or corporate body subject to taxation therein, to deliver to him a statement in writing, or partly written and partly printed, showing the aggregate amount of money due, &c., 'and also the amount of all shares or stock held or owned by such person, company, firm, or corporate body in any bank, institution, or company now or hereafter incorporated in pursuance of any law of any other state or government; and all public loans or stocks whatever except those issued by this Commonwealth, and all money loaned on interest in any other state.'

"We feel compelled to say that under the provisions of these statutes the defendant is legally liable to pay taxes which constitute the plaintiff's claim in the case stated, and therefore enter judgment against the defendant and in favour of plaintiff for the sum of $212.40 and the costs of suit."

Which was the error assigned.

*Edward J. Fox* and *H. D. Maxwell,* for plaintiff, argued, that this was an attempt by the state to tax property beyond its limits, and, therefore, not subject to its control. The Warren Foundry and Machine Company is a manufacturing corporation, whose place of business and whose entire property is situated in the state of New Jersey. That property is taxed by the state in which it is situate. The plaintiff is a member of that corporation, his money, in part, has purchased the property of the company, but he resides in this state.

It is not a company whose capital is not of taxable visible real property, subject to general taxation in the state where located, as insurance companies, &c., making profits by insuring in Pennsylvania, but realty, &c., subject to taxation like any other land for all local purposes, as well as on their capital for state purposes, in the state where located. These stock certificates of plaintiff in error merely represent his title or quantum of ownership, the same as his deed would if the company was not incorporated, and he was tenant in common with the other contributors to the purchase.

In Story's Conflict of Laws, it is said: "That every nation possesses an exclusive sovereignty and jurisdiction *within its own territory.* The direct consequence of this rule is, that the laws of every state affect and bind directly all property whether real or personal *within its territory.*" § 18.

"The sovereign has power and authority over his subjects, and over the property *which they possess within his dominions.*" § 19.

"Another maxim or proposition is, that no state or nation can by its laws directly affect or bind property *out of its own territory,* or bind persons not resident therein, whether they are natural born subjects or others. This is a natural consequence of the first proposition, for it would be wholly incompatible with the equality and exclusiveness of the sovereignty of all nations, that any one nation should be at liberty to regulate either persons or things not within its own territory. It would be equivalent to a declaration, that the sovereignty over a territory was never exclusive in any nation, but only concurrent with that of all nations; that each could legislate for all, and none for itself; and that all might establish rules, which none were bound to obey. The absurd results of such a state of things need not be dwelt upon. Accordingly Rodenburg has significantly said, that no sovereign has a right to give the law beyond his own dominions; and if he attempts it, he may be lawfully refused obedience, for whenever the foundation of laws fails there, their force and jurisdiction fail also." § 20. See also McCullough *v.* The State of Maryland, 4 Wheat. 487; Borough of Carlisle *v.* Marshal, 12 Casey 402.

What protection or value does the state of Pennsylvania or the county of Northampton give to funds invested in New Jersey? It is right to tax the funds, say the court, in the ·case last cited, "because the safety and value of the fund depend on the existence of the government, which such taxes go to support." If this be the reason why the taxing power may levy the tax, then the plaintiff in error here cannot be taxed for the stock in question, because the Warren Foundry Company might continue to exist and to prosper, even though both the state government

of Pennsylvania and the county of Northampton were blotted out of existence."

The defendant is thus taxed simply because he is a resident of Pennsylvania, and it follows that they may go a step further and tax him for his real estate in New Jersey, New York, or elsewhere. He may as well be taxed for his real estate situated in another state, as for his money which was long since invested in real estate in another state. His certificates of stock, which may be in New Jersey, are but the evidence of the proportion of the property of the corporation of which he is owner. His title-deeds to real estate in New Jersey are only the evidence that he is the owner of the land there. Nay, more, if, because personal estate is supposed to accompany the person of the owner and may be taxed in the state, because of the residence of the owner therein, why may not the state of Pennsylvania in her chase for subjects of taxation beyond her borders, tax the stock of goods which Mr. McKeen, as a merchant, might have in New York, or even in London or Calcutta?

In the case of Commonwealth of Pennsylvania v. Trenton Delaware Bridge Company, 9 Am. Law Reg. 298, Judge Pearson decided, that as the company was incorporated by the two states of Pennsylvania and New Jersey, and one-half of the bridge only was in Pennsylvania, that only one-half of its capital stock could be taxed in Pennsylvania: citing Howell v. The State, 3 Gill. 23.

Levying a tax on the property of the corporation is taxing the individual stockholders; and if the law be as the learned judge in the court below has decided it to be, why may not the state tax the whole of the capital stock, the state of New Jersey do the same, and the state of New York tax the owners of the stock who may happen to reside there?

We contend, therefore, that as this property is not within the territory of the state, it is exempt from taxation either for state or county purposes. And if it even were in this state, the capital being taxed as a corporation, the certificates of ownership of that capital would not be subject to the same taxation over again.

*O. H. Meyers* and *C. G. Beitel*, for defendant.—The argument for the plaintiff in error is based upon the assertion, that the stock which he holds in the Warren Foundry and Machine Company is real estate, and that the certificates which he holds are the evidence of title to such real estate. This we deny. The title to the real estate owned by the Warren Foundry and Machine Company is held by the corporation, and the evidence of that is a deed, and not the certificates of stock held by the individual stockholders.

[McKeen *v.* County of Northampton.]

The certificates of stock are the evidence of an interest which the stockholder has in the corporation, and this interest is personal property: Bouvier's Law Dic.; 4 Davis's Ab. 670; Sull. on Land Titles 71; Walk. Intro. 211; 1 Hill. Ab. 18. Stocks in Pennsylvania are considered personal property, and as such follow the person of the owner. Under the Act of 29th March 1819, Purd. 436–38, stock may be taken in execution and sold in the same manner as goods and chattels are in law to be so taken and sold: Lex *v.* Potter, 4 Harris 295.

Stocks are a species of merchandise, and following the person of the owner, he being a citizen of Pennsylvania, are under the control of the laws of Pennsylvania: Story's Conflict of Laws.

The 32d section of the Act of 29th April 1844, Purd. 949, expressly declares, that "all shares of stock in any (bank) institution or company now or hereafter incorporated by or in pursuance of any law of this Commonwealth, or of any other state or government, are taxable for state purposes.

The 3d section of the Act 22d April 1846, Purd. 952, prescribing the duties of assessors, requires them to return to the county commissioners all shares of stock held by any person in any bank, institution, or company, incorporated by the laws of any other state or government, and the 34th section of the Act of 1844 requires the commissioners to assess a tax of three mills on every dollar of the value thereof for state purposes. This is what the commissioners of Northampton county have done.

In The Saving Fund *v.* Yard, 9 Barr 359, and The Easton Bridge Company *v.* The County, Id. 415, it was held that bank stocks held by corporations were taxable for state and county purposes. All property taxable for state purposes is also taxable for county purposes: Spangler *v.* York County, 1 Harris 322. See also Lycoming County *v.* Gamble, 11 Wright 106.

The opinion of the court was delivered, June 29th 1865, by

AGNEW, J.—James McKeen is the owner of four hundred and seventy-two shares of the capital stock of a manufacturing company, incorporated under the laws of New Jersey, doing business and holding its property in Warren county, in that state. McKeen himself is a resident of Easton, Pennsylvania, and the question is, whether his stock is taxable here for state and county purposes.

The taxing power rests upon the reciprocal duties of protection and support between the state and the citizen, and the exclusive sovereignty and jurisdiction of the state over the persons and property within its territory. In McCullough *v.* The State of Maryland, 4 Wheat. 487, Marshall, C. J., remarks of the taxing power: " It is obvious that it is an incident of sovereignty, and is co-extensive with that to which it is incident. All

subjects over which the sovereign power of a state extends are objects of taxation; but those over which it does not extend are, upon the soundest principles, exempt from taxation." Story, in his Conflict of Laws, § 19, says: "The sovereign has power and authority over his subjects, and over the property which they possess within his dominions." See Id. §§ 18 and 20.

The defendant below being a citizen of this state, it is clear he is subject personally to its power to tax, and that all his property accompanying his person, or falling legitimately within the territorial jurisdiction of the state, is equally within this authority. The interest which an owner of shares has in the stock of a corporation is personal. Whithersoever he goes it accompanies him, and when he dies his domicil governs its succession. It goes to his executor or administrator, and not to the heirs, and is carried into the inventory of his personal effects. When it is argued, therefore, that the foundry, machine-shop, and other estate of the corporation, being within the state of New Jersey, are subject wholly to the same exclusive state jurisdiction there which we claim for this state over property within its territory, another ownership is stated and a new issue introduced. But to that property the defendant below has no title; his title being in the shares he holds, and not in the property of the corporation. No execution against him there would sell a spark of right to it, nor would his heirs at law succeed to any estate in it. Unquestionably it may be taxed as the property of the corporation in New Jersey; but the ownership there is that of the corporation, the legal entity, and not of the natural persons who own the shares of its stock.

The stock of individuals may be controlled, to a certain extent, in New Jersey to make it liable to the claims of their domestic creditors, or legatees and next of kin. Even ancillary administration may be granted there to preserve the estate for resident claimants. But even then the residue of McKeen's stock would be remitted to the executors or administrators of the domicil in Pennsylvania, and the right of succession would be governed by our laws; thus proving that though local authority may attach to the stock for special purposes, its ownership has its legal *situs* at the domicil of the owner. There is abundant authority for this: Mothland v. Wireman, administrator of Thornburg, 3 Penna. 185; Miller's Estate, 3 Rawle 312; Stokely's Estate, 7 Harris 476; Dent's Appeal, 10 Id. 514.

Another feature is noticeable. In the exercise of the authority to tax, the proceeding is personal only. Though different kinds of property are specified as the subjects of taxation, it is not as a proceeding *in rem*, but only as affording the means and measure of taxation. The tax is assessed personally, and the means of enforcement is a warrant against the person of the owner, and

[McKeen *v.* County of Northampton.]

any property he has whether taxed or not: Act 15th April 1834, §§ 20, 21; Purd. 1861, p. 938–9.

We have authorities directly upon this question deciding the principle, though upon a different species of tax—the collateral inheritance tax: In re Short's Estate, 11 Harris 63. The decedent, a resident of Philadelphia, owned half a million of dollars in stocks and corporations of other states, and bonds of the state of Kentucky, and a bank deposit in New York; all were held to be subject to the collateral inheritance tax here. Gibson, C. J., opens his opinion by stating: "That Mr. Short's property out of the state subjected him to personal liability for taxes assessed on it here *in his lifetime*, is not to be doubted. The general rule is, that the *situs* of personal property follows the domicil of the owner of it, insomuch that even a creditor cannot reach it in a foreign country, except by attachment or some other process provided by the local law; certainly not by a personal action, without appearance or something equivalent to it." To the same effect is the case of Hood's Estate, 9 Harris 106; the difference of domicil merely leading to an opposite result.

The court below was right in entering judgment for the whole amount of the taxes, state and county. The question of liability for *county* taxes is disposed of in the opinion just read in the case of Whitesell *v.* Northampton County.

Judgment affirmed.