(March 27, 1908.)

# WEISER NATIONAL BANK, a Corporation, Appellant, v. WOODSON JEFFREYS, Treasurer, et al., Respondents.

[95 Pac. 23.]

NATIONAL BANKS—LIMIT OF STATE TAXATION—OF CAPITAL STOCK—OF SHARES OF STOCK—ASSESSMENT TO BANK—ASSESSMENT OF SHARES—TO SHARE OWNERS—VOID ASSESSMENT—LIST OF BANK PROPERTY MADE BY CASHIER—ESTOPPEL OF BANK—POWER OF BOARD OF EQUALIZATION.

1. The only power the state has to levy any taxation, either direct or indirect, upon national banks, their property, assets or franchises, is that granted by the laws of the United States.

2. Sec. 5219, Rev. Stat., of the United States, is the measure of the power of a state to tax national banks, their property or their franchises.

3. Any tax on the property of a national bank that is in excess of and not in conformity to the provisions of said section of the Revised Statutes of the United States is void.

4. The term, "capital stock," does not mean "shares of capital stock," as used in our revenue law, but means the actual money or property paid in and possessed by the corporation.

5. There is no authority under the statutes of the United States nor under the revenue laws of this state which authorizes the taxation of the capital stock of national banks.

6. The county assessor has no authority to assess the "capital stock" of a national bank, but is given authority to assess the shares of stock of such bank to the owners thereof.

7. Under the provisions of sec. 12, art. 7, of the state constitution, the county commissioners for the several counties of the state constitute the boards of equalization for their respective counties, whose duty it is to equalize the valuation of the taxable property in their respective counties under such rules and regulations as may be prescribed by law.

8. Under the provisions of secs. 54 and 55 of the revenue act of this state, approved March 12, 1901 (Sess. Laws 1901, p. 233), the method and manner of equalizing the valuation of the taxable property in the several counties of the state is provided for, and applies to the taxable property in the county, and not to property over which the taxing power has no jurisdiction.

9. Under the provisions of said revenue act, the assessor is authorized to assess the shares of stock of national banks to the in-

dividual owners thereof, and is prohibited from assessing the capital stock of such bank.

10. The cashier of such bank may act as the agent of the bank in listing its property for taxation, but he has no authority to list the capital stock of such bank for assessment against the bank, and the mistake of the cashier in listing the capital stock of the bank for taxation will not estop the bank from recovering the taxes paid under protest on such void assessment.

11. *Inland Lumber & Timber Co. v. Thompson*, 11 Ida. 508, 114 Am. St. Rep. 274, 83 Pac. 933, cited and distinguished.

(Syllabus by the court.)

APPEAL from the District Court of Seventh Judicial District for Washington County.   Hon. Ed. L. Bryan, Judge.

Action to recover taxes paid under protest on a void assessment.   Judgment for the defendants.   *Reversed.*

Ed. R. Coulter, for Appellant.

"An assessment made within the time and in the manner prescribed by the statute is indispensable in proceedings to enforce the collection of taxes."   (Cooley on Taxation, 3d ed., 597; *Shoup v. Willis*, 2 Ida. 120, 6 Pac. 124; *St. Louis I. M. & S. Ry. Co. v. Miller*, 67 Ark. 498, 55 S. W. 926; sec. 43, Revenue Act of Idaho, Sess. Laws, 1901, p. 249; sec. 5219, U. S. Rev. Stat. [U. S. Comp. Stat. 3502].)

States have no jurisdiction to tax the agencies of the federal government except as the federal government grants the right to the state so to do.   (Cooley on Taxation, 3d ed., 129.)   "An assessment made without jurisdiction is void." (Cooley on Tax., 3d ed., 1390; *Owensboro Nat. Bank v. Owensboro*, 173 U. S. 664, 19 Sup. Ct. 537, 43 L. ed. 850; *Collins v. Chicago*, Fed. Cas. No. 3011, 4 Biss. 472; *First Nat. Bank v. Richmond*, 39 Fed. 309; *National Bank v. Richmond*, 42 Fed. 877; *Boston v. Beal*, 51 Fed. 306; *Smith v. First Nat. Bank*, 17 Mich. 479; *National Bank of Mobile v. Mobile*, 62 Ala. 284, 34 Am. Rep. 15; *Farmers' etc. Bank v. Hoffman*, 93 Iowa, 119, 61 N. W. 418.)

"The shares of a national bank cannot be listed and valued in the aggregate, and as such aggregate placed on the tax list

in the bank's name. Such shares when listed and valued for taxation are required to be placed on the proper tax list in the names of the respective owners." (*Miller v. First Nat. Bank,* 46 Ohio St. 424, 21 N. E. 860; *Springfield v. Springfield Bank,* 87 Mo. 441.)

"Where an assessment is utterly void, on the ground that the assessor did not have jurisdiction to impose the same, an action may be maintained to recover back money paid under protest, in satisfaction thereof, without first having the assessment set aside or vacated." (*Bruecher v. Village of Port Chester,* 101 N. Y. 240, 4 N. E. 272; *Mechanics' Sav. Bank v. Granger,* 17 R. I. 77, 20 Atl. 202.)

"Capital stock" and "shares of capital stock" are two distinct things, separably taxable. "Capital stock" as used in the tax law does not mean "shares of stock," but means the actual money or property paid in and possessed by the corporation. (*State Bank of Virginia v. City of Richmond,* 79 Va. 113; *People v. Feitner,* 92 App. Div. 518, 87 N. Y. Supp. 304, and authorities therein cited.)

"The taxpayer is not estopped by his return when the assessment is void." (*Wilmington v. Ricaud,* 90 Fed. 214, 32 C. C. A. 580; *Phelps v. Thurston,* 47 Conn. 477; *Comm. v. Hamilton,* 24 Ky. Law Rep. 1944, 72 S. W. 744; *Charlestown v. Middlesex County,* 109 Mass. 270; *State v. Burrough,* 174 Mo. 700, 74 S. W. 610; *Chicago etc. Ry. Co. v. Cass Co.,* 51 Neb. 369, 70 N. W. 955; *Sommer v. Boyd,* 48 Ohio St. 648, 29 N. E. 497; *Centennial Eureka Min. Co. v. Juab County,* 22 Utah, 395, 62 Pac. 1024; *Louisville v. Anderson,* 79 Ky. 334, 42 Am. Rep. 220; *Central Pac. Ry. Co. v. California,* 162 U. S. 91, 16 Sup. Ct. 766, 40 L. ed. 903; *Milford Water Co. v. Town of Hopkinton,* 102 Mass. 491, 78 N. E. 451.)

Frank Harris, for Respondents.

"When provision is made for an application to a board of equalization or review for the correction of errors in an assessment, such remedy is exclusive, and a taxpayer failing to avail himself thereof within the time prescribed cannot prevent the collection of a tax for any cause for which he

might have had an abatement.'' (25 Am. & Eng. Ency. of Law, 1st ed., 242, and cases therein cited; *Stanley v. Board of Supervisors*, 121 U. S. 535, 7 Sup. Ct. 1234, 30 L. ed. 1004; *Northern Pac. Ry. Co. v. Patterson*, 10 Mont. 90, 24 Pac. 704; *First Nat. Bank v. Bailey*, 15 Mont. 301, 39 Pac. 83; *Inland Lumber etc. Co. v. Thompson*, 11 Ida. 508, 114 Am. St. Rep. 274, 83 Pac. 933; *Williams v. Holden*, 4 Wend. 223; 45 Cent. Dig. 1121, sec. 809.)

SULLIVAN, J.—This action was brought by the Weiser National Bank, a corporation, as plaintiff, against Woodson Jeffreys, treasurer of Washington county, and Washington county, as defendants, to recover a tax of $636 paid under protest. The case was submitted to the trial court on an agreed statement of facts, and judgment was entered against the plaintiff, who is appellant here, dismissing the action.

The facts stipulated were in effect as follows: That the Weiser National Bank is a banking corporation organized under the laws of the United States of America relating to national banks; that its principal office and place of business is at the city of Weiser in Washington county, and that it began doing business on March 15, 1906; that said bank was organized with a paid-up capital of $50,000, consisting of 500 shares of capital stock of the par value of $100 each; that a list of the stockholders and owners of the shares of capital stock of said corporation is attached to the stipulated facts as an "exhibit"; that said list contains a true statement of the names of the stockholders and their residences at the time of the organization of said bank, as well as at the date of the attempted assessment of the capital stock of said bank by the county assessor and tax collector of said Washington county for the year 1906; that all of the money with which said shares of stock were purchased, except the sum of $4,000, with which $4,000 were purchased two shares of Rebecca K. Troy of Cincinnati, Ohio; two shares of Samuel R. Meyer of Cincinnati, Ohio; six shares of Sig Wise of Cincinnati, Ohio, and thirty shares of M. McGregor of Portland, Oregon, was in the state of Idaho on the second Monday of

January, 1906; that from the second Monday of January, 1905, until the second Monday in January, 1907, Francis M. Potter was the duly qualified and acting assessor and *ex-officio* tax collector of said county; that from the second Monday in January, 1905, until the second Monday in January, 1907, J. M. Canary was the duly elected, qualified and acting treasurer of said county; that since the second Monday of January, 1907, defendant Woodson Jeffreys has been and now is the duly qualified and acting treasurer of said county, being the successor of said Canary; that on or about the month of May, 1906, said Potter, in his official capacity of assessor of said Washington county, did attempt to assess all the property of plaintiff corporation it then owned for taxation for the year 1906, regardless of the fact that the plaintiff corporation was not in existence on the second Monday of January, 1906, and in pursuance of said assessment, said assessor did, on tax list numbered 313 for said year, attempt to assess the following described property for the purpose of taxation for the year 1906, to wit: Here follows a description of certain real estate belonging to said plaintiff corporation with improvements thereon, about which there is no question in this action. Then follows: "personal property, capital stock two-thirds of year, $12,000.00"; that said tax list was sworn to by the cashier of said bank; at the same time there was furnished to said assessor by said cashier a list of all stockholders of said bank, their postoffice addresses and the number of shares of the stock of said bank owned by each, which list was attached to said Tax List No. 313; that the taxes upon all of said shares of stock of said bank were attempted to be assessed as shown by said tax list and not otherwise, and none of said shares were assessed against the holders of the same in the individual assessment list of the personal property of said stockholders; that upon the tax-roll for 1906, none of said owners and holders of said shares of stock were charged with or taxed for the same, but the said plaintiff bank is charged with the whole thereof; that the amount of taxes levied upon said shares of stock as equalized by the state board of equalization was the sum of $636; that on the

5th day of January, 1907, the plaintiff bank, under protest, paid said taxes on said capital stock, and at the same time filed with the tax collector its protest in writing, which is attached to said agreed statement of the case as an "Exhibit"; that at the time of filing said written protest, the attorney of the plaintiff bank entered into a stipulation with the county attorney of said county relative to the paying in of said taxes under protest, a copy of which stipulation is contained in the record; that at the time of paying said taxes to said *ex-officio* tax collector under protest, the plaintiff also filed with said tax collector and also with the county treasurer of Washington county, a copy of said written protest and also of the stipulations heretofore referred to; that the $636 so paid under protest is the amount of taxes assessed against said capital stock alone, the same being listed for ⅔ of a year at $12,000; but that the plaintiff paid all taxes levied against its real estate voluntarily and without protest and in no wise wishes to recover back the same; that the taxes so paid under protest were turned over by the tax collector to the county treasurer, and that the county treasurer deposited same in a special deposit, separate and apart from all other moneys; and that said treasurer surrendered and turned over said special deposit to his successor in office, the defendant herein, Jeffreys; and that said sum is now in his hands as such county treasurer, and that the same is by him kept separate and apart from all other moneys which have come into his hands as public money; that at the April, 1907, meeting of the board of county commissioners of said Washington county, the plaintiff bank applied to said board to refund said $636 on the facts aforesaid, but that said board of county commissioners were undecided as to their powers, and it was there agreed by and between the plaintiff bank and the defendants that the agreed facts set forth should be presented to the judge of the district court of said county for his decision thereon. On that statement of facts, the district court entered judgment in favor of the defendants and dismissed the action. This appeal is from the judgment.

The two principal questions presented for decision are: (1) Was the assessment and levy of the $636 taxes on the

capital stock of appellant bank for 1906 merely irregular or was it void? (2) If void, is appellant estopped from recovering from respondents the amount of said tax, by reason of appellant's failure to make application to the board of equalization of Washington county for a correction of said assessment and relief therefrom?

Was the assessment and levy absolutely void or only irregular? If the state or county has no authority to assess the capital stock of a national bank, the assessment then is void. The states would be wholly without power to levy any tax, either direct or indirect, upon national banks, their property, assets or franchises, were it not for the permissive legislation of Congress. (See notes to sec. 5219, Revised Statutes of the United States, and authorities there cited; 5 Fed. Stat. Ann., p. 157 [U. S. Comp. Stat. 1901, p. 3502].) That section is as follows:

"Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the state within which the association is located; but the legislature of each state may determine and direct the manner and place of taxing all the shares of national banking associations located within the state, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any national banking association owned by nonresidents of any state shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either state, county or municipal taxes, to the same extent, according to its value, as other real property is taxed."

In *Owensboro Nat. Bank v. Owensboro*, 173 U. S. 664, 19 Sup. Ct. 537, 43 L. ed. 850, it is held that the provisions of said section of the Revised Statutes of the United States are the measure of the power of a state to tax national banks, their property or their franchises. The court held:

"This section, then, of the Revised Statutes is the measure of the power of a state to tax national banks, their property, or their franchises.   By its unambiguous provisions the power is confined to a taxation of the shares of stock in the names of the shareholders and to an assessment of the real estate of the bank.   Any tax, therefore, which is in excess of, and not in conformity to, these requirements, is void."

It will be observed from the provisions of that section that all shares of stock of the stockholders may be included in the valuation of the personal property of the owner or holder of such shares in assessing taxes imposed by the authority of the state in which the bank is located and under the provisions of said section, the state or county may tax the real estate belonging to such bank.

It will be observed from the stipulated facts that the "capital stock" was assessed and not the shares of capital stock.   The term, "capital stock," does not mean "shares of capital stock," but means the actual money or property paid in and possessed by the corporation.   (*State Bank of Virginia v. City of Richmond*, 79 Va. 113.)   Neither under said statute of the United States nor under the revenue law of the state of Idaho is there any authority to tax the capital stock of national banks.   The assessor is given no authority or jurisdiction to assess the capital stock of the appellant bank. He is given authority to assess the real estate belonging to the bank and to assess the shares of stock to the owners thereof. The taxes so assessed must be paid by the bank.   Sec. 43 of the revenue law, approved March 22, 1901 (Sess. Laws 1901, p. 233), is as follows:

"The stockholders of every banking association located in this state, and organized under the laws of the United States or of this state, must be assessed and taxed on the value of their shares of stock therein in the county, city, town, village and independent school district, authorized by law to collect revenue as in this act provided, where such bank is located, whether the stockholders there reside or not; such shares must be listed and assessed with regard to the value of such shares by reason of any net individual profits or surplus of such cor-

poration, and with regard to the ownership thereof, subject, however, to all deductions allowed in the assessment of other moneyed capital, and subject to the restriction that taxation of such shares must not be at a greater rate than is assessed on any other moneyed capital in the hands of individual citizens of the state in the place where such bank is located. Every such banking association must furnish to the assessor a full and correct list of the names and residence of its stockholders and the number of shares held by each. The taxes upon such shares must be assessed against the holder of the same in the list of personal property and must be paid by the bank. The real estate of such banking association is subject to state, county, municipal and district taxation as other real estate.''

It will be observed from the provisions of said section that the stockholders of a national bank may be assessed and taxed on the value of their shares of stock, but there is no provision in said section authorizing the assessment of the ''capital stock'' of the bank, and the provisions of said sec. 43 are in conformity with the provision of said sec. 5219, U. S. Rev. Stat. We conclude, therefore, that the assessor had no jurisdiction or authority to assess the capital stock of said bank to the bank, or at all.

The next question presented for consideration is as to whether the appellant is estopped, under the facts of this case, from recovering from the respondents the amount of said tax, and whether it is estopped therefrom by reason of its failure to make application to the board of equalization of Washington county for relief from said void assessment.

It is contended by counsel for respondents that the exclusive remedy for the appellant to be relieved of this tax was before the county board of equalization, and he cites, among other authorities, 25 Am. & Eng. Ency. of Law, 1st ed., p. 242, where it is said:

''When provisions are made for an application to the board of equalization or review for the correction of errors in an assessment, such remedy is exclusive and the taxpayer, failing to avail himself thereof within the time prescribed, cannot

prevent the collection of a tax for any cause for which he might have had an abatement."

We will now refer to the provisions of our constitution and the statute law prescribing the powers and duties of the board of equalization. Under the provisions of sec. 12, art. 7, of the constitution of this state, it is provided, among other things, that "the board of county commissioners for the several counties of the state, shall constitute boards of equalization for their respective counties, whose duty it shall be to equalize the valuation of the taxable property in the county under such rules and regulations as may be prescribed by law." It will be observed from those provisions that the boards of equalization have authority "to equalize the valuation of the taxable property in the county." Secs. 54 and 55 of the revenue act, approved March 12, 1901 (Sess. Laws 1901, p. 233), provide the method and manner of equalizing the valuation of such property. Those provisions of the constitution and the statute apply to "taxable property in the county." Property over which the taxing authority has no jurisdiction does not come within the jurisdiction of the board of equalization, under the provisions of said statute, and hence the bank was not required to make application to said board for relief, and is not estopped from recovering the amount of the tax paid under protest. As the capital stock of the appellant bank was not taxable property within the county, it does not come within the provisions of said equalization law. By the provisions of said revenue act, the assessor was commanded to assess the shares of stock of such banks as the appellant to the individual owners thereof, and was impliedly prohibited from assessing the capital stock of the bank to the bank, or at all. While it is true that the cashier of the bank swore to the tax list in which the capital stock of said bank was attempted to be assessed, he was without any authority or right to do so, and could not bind the bank by his illegal act. It is not claimed that there was any fraud in this matter, but that it was ignorance of the law as to the rights of the bank in the premises. It is not claimed that there were any false representations upon which the assessor relied in making said assessment.

In the *City of Wilmington v. Ricaud*, 90 Fed. 214, 32 C. C. A. 580, which is a case quite similar to the one at bar, it was held: "That the mistake of the cashier should not estop the bank. He was the agent of the bank, to list its property for taxation. He had no authority or semblance of authority to list as its property the shares of the stockholders, nor to assume for the bank the payment of their tax out of the bank's funds." Under our law the bank is liable for the payment of the tax assessed against the shares of stock to the owners thereof, but in the last-cited case it is held that the mistake of the cashier would not estop the bank. The court in that case also said:

"The general principle is stated in the case of the *City of Charlestown v. County Commrs. of Middlesex*, 109 Mass. 270; 'One who by mistake of his rights returns to the assessor as liable for taxation a list of property which by law is exempt, is not thereby estopped to claim an abatement of the tax.' " And in the same case the court said: "The taxpayer is not estopped by his return when the assessment is void."

The case of *Inland Lumber & Timber Co. v. Thompson*, 11 Ida. 508, 114 Am. St. Rep. 274, 83 Pac. 933, is not in point in this case. In that case the property involved was property subject to taxation, and the appellant returned it as its property, and it was held to be estopped from denying its ownership; while in the case at bar, the capital stock of said bank was not subject to taxation, and the list furnished by the cashier on its face shows that it was not subject to taxation. We therefore conclude that the appellant is not estopped from recovering back said taxes.

The judgment of the trial court must be reversed and it is so ordered, and the cause remanded for further proceedings in accordance with the views herein expressed. Costs of this appeal are awarded to the appellant.

Ailshie, C. J., and Stewart, J., concur.